ORIGINAL

FILED
07 NOV 30 PM 12: 20
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

MELISSA W. COOK, ESQ.; SBN: 134791
KERRY K. FENNELLY, ESQ.; SBN: 232621
MELISSA W. COOK & ASSOCIATES
3444 Camino del Rio North, Suite 106
San Diego, California 92108
Telephone: (619) 280-4302
Facsimile: (619) 280-4304

Attorneys for SAN DIEGO UNITE-HERE PENSION FUND

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FILE BY FAX

| | |
|---|---|
| SAN DIEGO UNITE-HERE PENSION FUND,<br><br>Petitioner,<br><br>vs.<br><br>SILVIA QUINTERO, an individual,<br><br>Respondent. | Case No. '07 CV 2261 JLS (JMA)<br><br>NOTICE OF PETITION AND PETITION FOR ORDER VACATING ARBITRATION AWARD |

Petitioner SAN DIEGO UNITE-HERE PENSION FUND (hereinafter "Petitioner" or "Pension Fund") hereby alleges and requests relief against Respondent SILVIA QUINTERO (hereinafter "Respondent" or "Quintero").

1. This Petition requests the Court to vacate an award in an arbitration conducted according to an agreement between the parties.

2. This Petition commences a new action.

3. Petitioner is a joint labor-management trust fund created pursuant to Section 302(c) of the Labor-Management Relations Act, 29 U.S.C. §186(c) and is governed by the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA"), as amended 29 U.S.C. §1001, *et seq.*

4. Petitioner's principle place of business is in San Diego, California.

5. Petitioner is informed and believes and thereon alleges, Respondent

is an individual, who, at all relevant times was, a resident and citizen of the state of California.

6. This Court's jurisdiction is invoked pursuant to ERISA section 502(e)(1), as amended (29 U.S.C. §1332(e)) as this action involves a claim by Respondent for pension benefits under a pension plan regulated and governed under ERISA.

7. The Arbitration Award was made in this district and the events giving rise to Respondent's claim occurred in this district, thus venue is proper in this district under 9 U.S.C. §9 and ERISA section 502(e)(2) (29 U.S.C. §1332(e)(2)).

8. On or about March 14, 2007, Petitioner and Respondent submitted a joint Submission for Arbitration to the American Arbitration Association. A true and correct copy of the Submission for Arbitration is attached and incorporated herein as Exhibit A.

9. Paragraph two of the Submission for Arbitration attached as Exhibit A hereto, provides that Respondent, under the appeals procedure set forth in Section 10.02 of the San Diego UNITE-HERE Pension Plan (hereinafter "Pension Plan"), appealed to arbitration the decision of the Board of Trustees of the San Diego UNITE-HERE Pension Fund (hereinafter "Trustees") to sustain the previous administrative decision denying Respondent's application for service pension benefits. A true and correct copy of Section 10.02 of the Pension Plan is attached and incorporated herein as Exhibit B.

10. Paragraph three of the Submission for Arbitration attached as Exhibit A hereto, further provides the questions for the arbitrator shall be (1) whether the Trustees were in error upon an issue of law; (2) whether they acted arbitrary or capriciously in the exercise of their discretion; and (3) whether their findings of fact were supported by substantial evidence.

11. On August 8, 2007, the arbitration hearing was conducted in San Diego, California before Arbitrator Phillip Tamoush, who was appointed through the

American Arbitration Association. Both parties were represented by counsel at the arbitration hearing.

12. On August 10, 2007, Arbitrator Tamoush sent the parties a letter listing a "couple of decisions" by him, in which he stated that the "'standards of proof' are as indicated in the signed submission statements" and he requested the parties submit additional post-hearing briefs on noted issues. A true and correct copy of the Arbitrator Tamoush's August 10, 2007 letter is attached and incorporated herein as Exhibit C.

13. After submission of post-hearing briefs by all parties, the Arbitration Award was made on August 29, 2007 and served on the parties on September 6, 2007. A true and correct copy of the Arbitration Award is attached and incorporated herein as Exhibit D.

14. The arbitration award requires Petitioner to grant Respondent service pension benefits without a severance of employment by Respondent in violation of the Pension Plan and the Internal Revenue Code and applicable regulations.

15. Petitioner requests that the Court vacate the Award on the grounds that the Arbitration Award was made "in manifest disregard of the law." *First Options of Chicago, Inc. v. Kaplan*, (1995) 514 U.S. 938, 942; see also *Wilko v. Swan*, (1953) 346 U.S. 427, 436-437 (overruled on other grounds, *Rodriguez De Quijas v. Shearson/American Expage, Inc.*, (1989) 490 U.S. 477); *Northrop Corp. v. Triad International Marketing S.A.*, 811 F.2d 1265, 1269 (9th Cir. 1987).

16. "Manifest disregard" exists when the "governing law alleged to have been ignored by the arbitrators [was] well defined, explicit, and clearly applicable." *Bear v. Buehler*, (C.D. Cal. 2000) 432 F. Supp. 2d 1024, 1026 (internal citations omitted). "The error made by the arbitrators must have been obvious and capable of being perceived readily and instantly. . ." *Id.* (internal citations omitted). "Moreover, the term 'disregard' implies that the arbitrator appreciated the existence of the clearly governing principle but decided to ignore it." *Id.* (internal citations omitted).

17. "Manifest disregard" has further been found to exist where an award

directs the parties to violate applicable law. *George Watts & Son, Inc. v. Tiffany & Co.*, (7th Cir. 2001) 248 F.3d 577, 580-581.

18. In this matter, Arbitrator Phillip Tamoush manifestly disregarded the clearly governing law of section 401(a) of the Internal Revenue Code of 1954 and directs the Pension Fund to violate section 401(a) of the Internal Revenue Code as well as the applicable Treasury Regulations and Revenue Rulings by requiring the Pension Fund to pay Quintero service pension benefits despite the fact Quintero has not severed her active employment.

19. As stated on page 9 lines 12 through 14 of the Pension Fund's Arbitration Brief, the Pension Fund at issue in this matter is a qualified plan under Internal Revenue Code Section 401(a). A true and correct copy of the Pension Fund's Arbitration Brief is attached and incorporated herein as Exhibit E.

20. As the Pension Fund explained on page 9 lines 15 through 27 of its Arbitration Brief, as well as at the arbitration hearing, because it is a qualified pension plan it may not distribute benefits to participants before they reach normal retirement age while they still are actively employed.

21. Additionally, the Pension Fund cited to and attached applicable Revenue Rulings to its Arbitration Brief, which hold that a pension plan which permits the participants, prior to any severance of employment (e.g. retirement, disability, or death) to withdraw all or a part of the funds accumulated on their behalf that consists of employer contributions or increments thereon is inconsistent with the accepted concept of a pension plan under the requirements of section 401(a) of the Code. *See* Rev. Rul. 56-693, 1956-2 CB 282 *as modified by* Rev. Rul. 60-323, 1960-2 C.B. 148; Rev. Rule 74-417, I.R.B. 1974-35, 6, attached and incorporated herein as Exhibit 4 of Exhibit E.

22. Despite the Pension Fund's clear explanation of the legal principles and applicability of Section 401(a) of the Internal Revenue Code, Arbitrator Tamoush manifestly disregarded the Internal Revenue Code and awarded Quintero service pension benefits despite the fact Quintero has not reached normal retirement age or severed her

employment with the Holiday Inn On The Bay Hotel.

23. Arbitrator Tamoush completely ignored the well-defined, explicit and clearly applicable governing law of Section 401(a) to this matter which was called to his attention numerous times.

24. It is evident that Arbitrator Tamoush manifestly disregarded the law as he does not mention Section 401(a) or the relevant Revenue Rulings once in his Arbitration Award despite the Pension Fund's discussion of the applicable and governing legal principles in both its Arbitration Brief and at the arbitration hearing.

25. Unless the Arbitration Award is vacated, this matter will result in significant injustice, as the Pension Fund will be forced to violate Section 401(a) and thus, risk losing its status as a qualified pension fund, which is the purpose of its existence.

26. Petitioner further requests that pursuant to 9 U.S.C. §10(a)(4) the Court vacate the Arbitration Award on the grounds that Arbitrator Tamoush exceeded his powers as outlined in the Submission For Arbitration submitted by and agreed to by the parties.

27. Although courts may not substitute their own interpretation for that of an arbitrator's, courts do determine issues of whether an arbitrator acted within the scope of his authority, and whether the award draws its essence from the agreement or is merely an example of the arbitrator's own brand of justice. *Local 1199, Hosp. & Health Care Emples. Union v. Brooks Drug Co.*, (2d Cir. 1992) 956 F.2d 22, 25. "The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." *Id.* (internal citations omitted).

28. In this matter, despite his acknowledgment in his August 10, 2007 letter that the "standards of proof" in this matter are as indicated in the Submission For Arbitration, Arbitrator Tamoush exceeded the bounds of his authority in order to reach a desired outcome and administer his own brand of justice.

29. As stated in the Submission of Arbitration attached hereto as Exhibit A, the three legal issues in which Arbitrator Tamoush was to limit his review were: (1) whether the Trustees were in error upon an issue of law; (2) whether they acted arbitrary or capriciously in the exercise of their discretion; and (3) whether their findings of fact were supported by substantial evidence.

30. A reading of the Arbitration Award illustrates Arbitrator Tamoush did not review this matter within the scope of the three legal issues presented to him but exceeded the limits of an "arbitrary and capricious" standard of review and reviewed this the mater *de novo*.

31. It is well established that the trustees of employee benefit funds have broad discretion in administering the affairs of the trust funds. See *Toensing v. Brown*, (N.D. Cal. 1974) 374 F.Supp. 191, 198, aff'd, 528 F.2d 69 (9th Cir. 1975); *Giler v. Board of Trustees*, (9th Cir. 1975) 509 F.2d 848, 849; *Gomez v. Lewis*, (3rd Cir. 1969) 414 F.2d 1312, 1313. It was Congress' intent that trustees "possess broad managerial and administrative discretion in the operation of their funds," especially in the area of "claims resolution." *Taylor v. Bakery & Confectionary Union Industrial International Welfare Fund*, (E.D.N.C. 1978) 455 F.Supp. 816, 819).

32. When the standard of review is arbitrary and capricious, the reviewing tribunal is limited in its review to considering only the evidence contained in the administrative record. *Jett v. Blue Cross & Blue Shield of Alabama,* (11th Cir. 1989) 890 F.2d 1137, 1139; See also, *Abatie v. Alta Health & Life Ins. Co.*, (9th Cir. 2006) 458 F.3d 955, 970 (en banc).

33. "The touchstone of 'arbitrary and capricious' conduct is unreasonableness." *Clark v. Washington Teamster Welfare Trust*, (9th Cir. 1993) 8 F.3d 1429, 1432. "'[The] inquiry is not into whose interpretation of plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable.'" *Id.* (citing *MacDonald v. Pan American World Airways, Inc.*, (9th Cir. 1988) 859 F.2d 742, 744).

34. It is evident throughout the Arbitration Award issued by Arbitrator Tamoush that he reviewed this matter under a *de novo* standard by deciding this matter on alleged evidence that was outside the administrative record regarding other participants and substituting his own interpretation of the plan document for that of the Trustees.

35. In paragraph one of the Decision section of the Arbitration Award, attached hereto as Exhibit D, Arbitrator Tamoush finds the Trustees were in error on an issue of law, yet he cites no law (including Section 401(a)) and improperly discusses his own interpretation of the Pension Plan.

36. In paragraph two of the Decision section of the Arbitration Award, Arbitrator Tamoush finds the Trustees acted arbitrarily and capriciously, yet he cites no findings of the Trustees that were unreasonable but rather again discusses evidence outside the administrative record and his own interpretation of the plan document.

37. Lastly, in paragraph three of the Decision section of the Arbitration Award, Arbitrator Tamoush states that the Trustees' findings of fact were not supported by substantial evidence, yet he fails to state what those findings of fact were or the evidence that was before the Trustees that they did consider.

38. Further evidence that Arbitrator Tamoush exceeded the bounds of his review by considering evidence outside the administrative record and substituting his own interpretation of the plan document to reach the result is found in his statements in the Arbitration Award on page 2 under "Further Rationale."

39. In paragraph one under Further Rationale of the Arbitration Award, Arbitrator Tamoush states the plan document has an "latent ambiguity" but instead of discussing the reasonableness of the Trustees' interpretation of that ambiguity he discusses the evidence and rationale he finds persuasive in interpreting the plan document to find it does allow Quintero to receive service pension benefits without severing her employment.

///

WHEREFORE, Petitioner prays for relief against Respondent as follows:

1. An order vacating the arbitration award;

2. An order determining that Respondent is not entitled to service pension benefits without first severing her active employment;

3. For such other and further relief as the Court deems just and proper.

DATED: November 30, 2007

BOARD OF TRUSTEES OF THE
SAN DIEGO UNITE-HERE PENSION FUND

By: [signature]
Melissa W. Cook, Esq.
Kerry Kessler Fennelly, Esq.
MELISSA W. COOK & ASSOCIATES
3444 Camino del Rio North, Suite 106
San Diego, California 92108
Attorney for Respondent

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| EXHIBIT A | Submission for Arbitration | 10 |
| EXHIBIT B | Section 10.02 of the Pension Plan | 12 |
| EXHIBIT C | Arbitrator Tamoush's August 10, 2007 letter | 14 |
| EXHIBIT D | Arbitration Award | 16 |
| EXHIBIT E | Pension Fund's Arbitration Brief | 19 |

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| IN THE MATTER OF:<br>SILVIA QUINTERO,<br>Petitioner,<br>vs.<br>BOARD OF TRUSTEES OF THE SAN DIEGO UNITE-HERE PENSION FUND,<br>Respondent. | CASE NO.<br><br>SUBMISSION FOR ARBITRATION |

TO: AMERICAN ARBITRATION ASSOCIATION 6795 North Palm Avenue, Second Floor, Fresno, California 93704.

The undersigned parties hereby request arbitration under the Labor Arbitration Rules of the American Arbitration Association.

On January 5, 2007, the Board of Trustees of the San Diego UNITE-HERE Pension Fund sustained the previous administrative decision denying Ms. Quintero's application for service pension benefits. Ms. Quintero is appealing the decision to arbitration under the appeals procedure set forth in Section 10.02 of the San Diego UNITE-HERE Pension Plan.

The questions presented for the arbitrator shall be (1) whether the Trustees



**EXHIBIT A**

were in error upon an issue of law, (2) whether they acted arbitrarily or capriciously in the exercise of their discretion, and (3) whether their findings of fact were supported by substantial evidence.

DATED:

SILVIA QUINTERO, Petitioner

DATED: 3/1/07

BOARD OF TRUSTEES OF THE
SAN DIEGO UNITE-HERE PENSION FUND

By:
MELISSA W. COOK, ESQ.
MELISSA W. COOK & ASSOCIATES
3444 Camino del Rio North, Suite 106
San Diego, California 92108
Attorney for Respondent



EXHIBIT A

(1) Application for Review. The claimant, or the claimant's duly authorized representative, may request a review of the claim denial by filing a written application for such review within sixty (60) days after receipt of the written notification of the denial. The Trustees may consider a late application if they conclude the delay in filing was for reasonable cause.

(2) Review Procedure. When any such application is received, the claim and its denial shall receive a full and fair review by the Trustees or any subcommittee to which it delegates this function. As part of the review procedure, the claimant, or the claimant's duly authorized representative, may review pertinent documents and submit issues and comments in writing, but shall have no right to appear personally before the reviewing group unless that group concludes that such an appearance would be of value in enabling it to perform its obligations hereunder.

(d) Notice of Decision on Review.

(1) Contents of Notice. The notice of decision on the appeal of a claim denial shall be furnished to the claimant in writing and shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent Plan provisions on which the decision is based. The decision shall be furnished to the claimant as promptly as possible after a decision is reached within the time period described below, and if not so furnished, the claimant may consider it to have been denied.

(2) Time of Notice. If the decision on review is to be made by the Trustees or a subcommittee of Trustees which is holding regularly scheduled meetings at least quarterly, the decisions shall be made no later than the date of the first such meeting which occurs at least thirty (30) days following receipt of the request for review. However, if special circumstances require an extension of time for processing, the decision shall be rendered not later than the third meeting following receipt of the request. In all other cases, the decision shall be made promptly and ordinarily not later than sixty (60) days after receipt of the request for review, unless special circumstances require an extension of time for processing, in which case the decision shall be rendered as soon as possible but not later than one hundred twenty (120) days after receipt of the request for review.

Whenever special circumstances require an extension of time for processing, written notice of the extension shall be furnished to the claimant before the extension period begins.

Section 10.02 Arbitration The decision of the Trustees, if the Employee, Retiree, Spouse, Alternate Payee or Beneficiary elects such further consideration, shall be final and binding upon all parties. However, if the Employee, Retiree, Spouse, Alternate Payee or Beneficiary is dissatisfied with the written decision of the Trustees, he or she shall have the right to appeal the matter to arbitration in accordance with the labor arbitration rules of the American Arbitration Association, provided that he or she submit a request for arbitration to the Trustees, in writing, within sixty (60) days of receipt of the written decision. If an appeal to arbitration is requested, the Trustees shall submit to the arbitrator a copy of the record upon which the Trustees' decision was made. The Trustees shall bear the costs of the arbitration. Each party will be responsible for their own attorney's fees incurred in such arbitration. The questions for the arbitrator shall be (1) whether the Trustees were in error upon



EXHIBIT B

an issue of law; (2) whether the Trustees acted arbitrarily or capriciously in the exercise of their discretion; and (3) whether the Trustees' findings of fact were supported by substantial evidence. The decision of the arbitrator shall be final and binding upon all parties whose interests are affected thereby. However, the claimant shall have the right to bring an action in court against the Fund after having first exhausted all administrative remedies under the Plan.



EXHIBIT B

# PHILIP TAMOUSH

## Arbitrator-Mediator-Factfinder

Post Office Box 1128
Torrance, California 90505-0128
(800) 747-9245 (Voice) (800) 903-4266 (Fax)
(www.finaldisputeresolution.com philip@tamoush.com)
(Principal Office & Mailing Address)

San Francisco/East Bay
385 Grand Avenue, Suite 201
Oakland, California 94610-4816

August 10, 2007

VIA AMERICAN ARBITRATION ASSOCIATION

Tim Brictson, Esq.
Bricston and Cohn
2214 Fifth Ave.
San Diego, CA 92101

Melissa W. Cook, Esq.
Melissa W. Cook & Associates
3444 Camino Del Rio North, Suite 106
San Diego, CA 92108

RE: ARBITRATION: Post-Hearing Details: YIP v. UNITE-HERE Pension Fund (AAA Case No. 73 620 00140 07 LYMC) and QUINTERO v. UNITE-HERE Pension Fund (AAA Case No. 73 620 00137 07 LYMC)

Dear Counsel:

Just a couple of decisions by me and requests so we can finalize and close the hearing in the above matters:

1. The 'standards of proof' are as indicated in the signed submission statements of the Appellants YIP and QUINTERO, for the purposes of my resolving the substantive issue of whether the Appellants should have been granted Service Pensions by the Board of Trustees without having to sever employment.
2. Please do submit written post-hearing briefs regarding any and all relevant issues presented in the hearings, using the 'standards of proof' from the submission agreements signed by the Appellants.
3. Please comment in any post-hearing brief on the meaning/implications of section 3.12 (b) of the Pension Plan specifically with regard to what 'recommencing employment' might mean, in anything, in the context of our hearing.
4. Please comment on the implications/meaning of there being at least some 22 employees who retired while continuing to work. Again, comment to the extent you

believe this is relevant to my deliberations. Mr. Brictson is ordered now to provide Ms. Cook with the names of at least those persons.

Of course, you are not required by me to submit a post-hearing brief if you choose not to or to further answer any of the questions posed above. However, in the interest of an expedited resolution, please provide me directly at the address above your briefs postmarked no later than August 17. Send an original and a copy and I will trade them when I receive both. I go on vacation August 31, so I do want to complete this process before then.

Thanks so much for your help in resolving these questions.

Sincerely,

Philip Tamoush

Cc: American Arbitration Association

EXHIBIT C

American Arbitration Association
*Dispute Resolution Services Worldwide*

*Western Case Management Center*
John M. Bishop
Vice President
Jeffrey Garcia
Assistant Vice President

6795 North Palm Ave, 2nd Floor, Fresno, CA 93704
telephone: 877-528-0880 facsimile: 559-490-1919
internet: http://www.adr.org/

September 6, 2007

**VIA ELECTRONIC MAIL and REGULAR MAIL**

Silvia Quintero
860 Manning Lane
San Diego, CA 92154

Melissa W. Cook, Esq.
Melissa W. Cook & Associates
3444 Camino Del Rio North, Suite 106
San Diego, CA 92108

Re: 73 620 00137 07 LYMC
Silvia Quintero
and
Board of Trustees of the Unite Here Pension Fund

Grievances: Silvia Quintero - Denial of Service Pension Benefits

Dear Parties:

By direction of the Arbitrator we herewith transmit to you the duly executed Award in the above matter. **This serves as a reminder that there is to be no direct communication with the Arbitrator. All communication shall be directed to the Association.**

Please note that the case file will be destroyed fifteen (15) months after the date of this letter.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter. As always, please do not hesitate to contact me if you have any questions.

Sincerely,
/s/
Lynn M. Cortinas - Case Manager
Direct: 559-490-1854 Fax: 559-490-1837
E-mail: cortinasl@adr.org

*Sandra L. Marshall- Supervisor: Direct: 559-490-1921/E-mail:* marshalls@adr.org

Enclosure(s)

cc: Philip Tamoush – via electronic mail only

**EXHIBIT D**
16
0895.30

# AMERICAN ARBITRATION ASSOCIATION
## Arbitration Tribunal

In the Matter of the Arbitration between

Re: 73 620 00137 07 LYMC
Claimant, SYLVIA QUINTERO
VS
Respondent, Board of Trustees of the UNITE-HERE Pension Fund

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Pension Fund Rules providing for arbitration of disputes between the above-named parties and dated October 13, 2003, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows:

### ISSUES

1. whether the Trustees were in error upon an issue of law.
2. whether they acted arbitrarily or capriciously in the exercise of their discretion.
3. whether their findings were supported by substantial evidence.

### BACKGROUND

The parties to this dispute and arbitration matter are SYLVIA QUINTERO, Appellant (Claimant) and the Board of Trustees of the UNITE-HERE Pension Fund (Respondent). An administrative hearing was held before the Board of Trustees regarding the Claimant's application for a Service Pension. While treated as an appeal of the denial of the Fund's administrators, the matter was not processed and heard as a *de novo* consideration. As provided in the Fund Plan, Claimant exercised his right to appeal the decision of the Trustees. The representatives of the parties appeared before the undersigned on August 8, 2007. Both parties were represented by Counsel.

### EXHIBITS

The parties presented documents relative their contentions, including the denial decision of the Fund administrators, the agenda note of the Trustees' denial of the pension, the transcript of the Trustees' hearing, new and old pension application forms, the Plan Rules, and other relevant documents. Pre- and Post-Hearing Briefs were filed by Counsel for both parties.

### DECISION

1. The Trustees were in error upon an issue of law (considering the Rules as the 'law' in this case) in that they failed to consider the question of severance of employment as presented by the Claimant, instituted a 'new' written requirement of proof of severance of employment by pension applicants, and failed to consider the apparent ambiguities in their Rules on this issue.



EXHIBIT D
17

2. The Trustees acted arbitrarily and capriciously as indicated above and in refusing to consider the evidence, finally adduced more specifically at the arbitration hearing, that numerous employees who had been granted Service Pensions retiree's had continued to work in the past without severing their employment. Instead, the Plan initiated a new requirement that pension applicants had to show proof of employment severance before their pension application would be considered on a substantive basis.
3. The Trustee's findings of fact were not supported by substantial evidence in that they failed to investigate the proffered evidence that other employees had not been required to sever employment prior to having their pensions granted.
4. ORDER: The Claimant's request for his Service Pension Benefit is hereby granted without a severance of employment.

**FURTHER RATIONALE**

1. Pension Plan Rules have a *latent ambiguity* in that they provide apparently for continued employment after receipt of Service Pension, but also provides for 'recommencing' of employment.
2. Arbitrator accepts showing that at least 22 employees in the two Hotels employing Appellant YIP (and YIP who is an Appellant in a 'companion' case, AAA Case No. 73 620 00140 07 LYMC, being heard simultaneously with the instant case).
3. Denial of pensions unless employment is severed denies retirees seniority and other benefits which they would continue to earn if they did not have to sever employment and for which other employees have benefited.
4. The Arbitrator adopts in whole or in part the rationale and argument of Claimant's Counsel as his findings of fact and conclusions of law.
5. The Arbitrator agrees with the sentiment expressed in the ***Restatement (Second) of Contracts*** which states in relevant part: "…it is sometimes said that extrinsic evidence (Arbitrator's Note: the 22 employees who have received pension benefits without severing employment) cannot change the plain meaning of the writing, but meaning can almost never be plain except in a context…" (found in ***How Arbitration Works (Elkouris), BNA, Sixth Edition*** page 437 ff., including footnotes))

The administrative fees and expenses of the American Arbitration Association totaling $500.00 shall be borne as incurred.

The fees and expenses of the arbitrator totaling $1500.00 shall be borne as incurred.

The other common expenses relating to this proceeding, totaling $16.55, shall be borne as incurred.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

8-29-07
**Date**

[signature]
**Philip Tamoush**

**EXHIBIT D**

MELISSA W. COOK, ESQ.; SBN 134791
KERRY KESSLER FENNELLY, ESQ.; SBN 232621
MELISSA W. COOK & ASSOCIATES, A.P.C.
3444 Camino del Rio North, Suite 106
San Diego, California 92108
Telephone: (619) 280-4302
Facsimile: (619) 280-4304

Attorneys for Respondent Board of Trustees of the San Diego UNITE-HERE Pension Fund

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| IN THE MATTER OF:<br><br>Sylvia Quintero,<br><br>Petitioner,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE SAN DIEGO UNITE-HERE PENSION FUND,<br><br>Respondent. | Case No. 73 620 00137 07 LYMC<br><br>RESPONDENT'S ARBITRATION BRIEF<br><br>Date: August 8, 2007<br>Time: 9:00 a.m.<br>Arbitrator Phillip Tamoush |

## I. INTRODUCTION

On October 25, 2006, the Board of Trustees of the San Diego UNITE-HERE Pension Fund (hereinafter the "TRUSTEES") held an appeal hearing regarding the request of Petitioner Sylvia Quintero (hereinafter the "PETITIONER") to receive a Service Pension Benefit while continuing to work at the Holiday Inn On The Bay Hotel. On November 15, 2006, the TRUSTEES held a supplemental hearing in regards to the same matter.

Following the Appeal Hearing, the TRUSTEES determined that the PETITIONER was not entitled to a Service Pension Benefit because she has not severed employment with her employer, which is a requirement to receive a Service Pension Benefit under the provisions of the San Diego UNITE-HERE Pension Plan (hereinafter the "PLAN"). A true and correct copy of the condensed transcript of the appeal hearing

is attached hereto as Exhibit "1", and incorporated herein by reference. A true and correct copy of the PLAN as revised and restated January 1, 2005, is attached hereto as Exhibit "A" to Exhibit "1", and incorporated herein by reference.

PETITIONER now seeks arbitration due to the fact that the TRUSTEES denied her appeal and seeks review of the TRUSTEES' finding that she is not entitled to a Service Pension Benefit under the PLAN. A true and correct copy of the Trustees' Findings is attached hereto as "Exhibit 2," and incorporated herein by reference.

## II. FACTS

The San Diego UNITE-HERE Pension Fund (hereinafter the "TRUST FUND") is a joint-labor-management pension trust fund operated pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (hereinafter the "LMRA"), and other applicable laws and regulations. The TRUST FUND is administered by a joint Board of Trustees consisting of an equal number of Trustees representing management and labor. Administration of the PLAN by the Trustees is regulated by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. (Hereinafter the "ERISA").

Pursuant to the applicable collective bargaining agreements between UNITE HERE Local 30 and participating employers, monies are contributed by signatory employers to the TRUST FUND and are used to provide retirement benefits for eligible employees of such signatory employers. The TRUST FUND administers pension benefits under the above-referenced PLAN, which was established effective January 1, 1968.

PETITIONER has continuously worked under the jurisdiction of the San Diego UNITE-HERE Local 30 Collective Bargaining Agreement at the Holiday Inn On The Bay Hotel from May 2, 1976 through the present. PETITIONER applied for a Service Pension Benefit on July 1, 2006.

Based on the above information, the TRUST FUND sent a letter to



EXHIBIT E

PETITIONER dated August 22, 2006, informing PETITIONER that her application for a Service Pension Benefit had been denied because of her continuing employment with the Holiday Inn On The Bay Hotel. The TRUSTEES determined that because PETITIONER did not sever her employment with a contributing employer, she did not meet the definition of a "Retired Employee" under the PLAN, which is defined in Section 1.27 of the Plan as "an Employee who has retired from Employment in the Industry within the meaning of Article III." The letter informed PETITIONER that if she could provide proof of her severance of employment from her employer, her application for a Service Pension Benefit would be reconsidered by the TRUSTEES.

PETITIONER subsequently requested an appeal hearing before the TRUSTEES. The hearing was held on October 25, 2006, at which time PETITIONER testified before the TRUSTEES. PETITIONER argued that she is entitled to receive a Service Pension Benefit without a separation from service because other employees of the Holiday Inn on the Bay Hotel have allegedly received pension benefits without a separation of service. Based on the Administrative Record and evidence presented at the hearing, the TRUST FUND affirmed the denial of PETITIONER's application for a Service Pension Benefit. The TRUST FUND found that because of PETITIONER's employment at the Holiday Inn On The Bay Hotel she is not eligible to retire and therefore not eligible for a Service Pension Benefit under the terms of the PLAN as she does not meet the definition of a "Retired Employee" under the PLAN.

## III. SCOPE OF REVIEW

### A. The Issues That May Be Considered By The Arbitrator Are Limited By The Plan

Pursuant to ERISA and Section 10.02 of the PLAN, the issues to be considered at arbitration are limited to the following:

(1) whether the Trustees were in error upon an issue of law;

(2) whether the Trustees acted arbitrarily and capriciously in the exercise



EXHIBIT E

of their discretion; and

(3) whether the Trustees' findings of fact were supported by substantial evidence.

The TRUST FUND will demonstrate that: (1) there was no error in applying either the controlling law or ERISA; (2) the decision was in conformity with the provisions of the PLAN and the decision was neither arbitrary nor capricious; and (3) the findings were based upon substantial evidence. Accordingly, the TRUSTEES submit that they have properly denied the claim submitted by the PETITIONER at the appeal level, and no further relief is warranted.

**B. Under ERISA, The Trustees Have Broad Discretion To Administer The PLAN**

It is well established that the trustees of employee benefit funds have broad discretion in administering the affairs of the Trust Funds. *See Toensing v. Brown*, 374 F.Supp. 191, 198 (N.D. Cal. 1974), aff'd, 528 F.2d 69 (9th Cir. 1975); *Giler v. Board of Trustees*, 509 F.2d 848, 849 (9th Cir. 1975); *Gomez v. Lewis*, 414 F.2d 1312, 1313 (3rd Cir. 1969). It was Congress' intent that trustees "possess broad managerial and administrative discretion in the operation of their funds," especially in the area of "claims resolution." *Taylor v. Bakery & Confectionary Union Industrial International Welfare Fund*, 455 F.Supp. 816, 819 (E.D.N.C. 1978). The Trustees have a fiduciary duty to administer the plan solely for the benefit of its beneficiaries and participants and the standard of care that a trustee must employ is that of a prudent man in a like situation. *See* ERISA § 404, 29 U.S.C. § 1104.

**C. Congress Intended That Trustees Have Primary Responsibility for Benefit Claims: Thus the Arbitrator's Scope of Review is Minimal and Limited Solely to the Issues and Evidence Before the Trustees at the Prior Appeal Hearing**

The broad managerial discretion afforded to trustees in administering trust funds "indicates a Congressional intent that [Trustees] be primarily responsible for



EXHIBIT F
22

establishing and operating the claims procedures. (Citations omitted). Correspondingly, there is a strong policy in favor of letting trustees decide an employee's benefit eligibility." *Bakery & Confectionary Union*, 455 F.Supp. at 820.

The scope of review in cases involving discretionary benefit determinations by Trustees, therefore, is exceedingly narrow and is not to be a trial de novo on the underlying facts or merits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). "The 'abuse of discretion' standard applies when the administrator is given discretionary authority." *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990). "In order to constitute an abuse of discretion a trustee's factual findings must be 'clearly erroneous.'" *Id.* at 482.

On review, the arbitrator may consider only that evidence which was before and known to the Trustees at the time the decision was made. *Wardle v. Central States Pension Fund*, 627 F.2d 820, 824 (7th Cir. 1980). The reviewing tribunal may only consider the record that was before the Trustees in order to determine whether such decision was arbitrary or capricious. *Jett v. Blue Cross & Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1989). Thus, the arbitrator is limited to the factual grounds that were available and known to the Trustees at the time the decision was made. *Id.* The consideration of additional evidence is not permitted and is improper. *Id.*

Furthermore, decisions by trustees of a plan covered by ERISA will be overturned only when they are determined to have been 1) arbitrary and capricious; 2) not supported by substantial evidence; or 3) erroneous on a question of law. *Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir. 1976). This standard has been followed by the Ninth Circuit (*see Aitken v. IP & GCU-Employer Retirement Fund*, 604 F.2d 1261, 1264 (9th Cir. 1979)) and, in fact, is the standard followed by all circuits which have addressed this question. *See Wolfe v. J.C. Penny Co.*, 710 F.2d 388, 393 n. 8 (7th Cir. 1983).

In *Wolfe*, the court defined the scope of the court's review in cases such as the present one as follows:

"In reviewing a fiduciary's decision '[a] federal court is to



EXHIBIT F
23

> focus on the evidence before the truste[e] at the time of [his] final decision and is not to hold a *de novo* factual hearing on the question of applicant's eligibility.' (Citations omitted). Policy considerations favor allowing the fiduciary to decide an employee's benefit eligibility." (Citations omitted).

*Wolfe*, 710 F.2d at 394.

As noted by the Fourth Circuit Court of Appeals in *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985) *overruled on other grounds by Cherepinsky v. Sears Roebuck & Co.*, 455 F.Supp. 2d 470 (D.S.C. 2006):

> "To review *de novo* all the evidence trustees **might** have considered is to transfer the administration of benefit and pension plans from their designated fiduciaries to the federal bench. Such substitution of authority is plainly what the formulated standards in this field are intended to prevent."

(Emphasis added).

There are sound reasons for preventing excessive judicial intervention in trust operations. The administration of a jointly trusteed trust fund is a complex matter, requiring special expertise and familiarity with the trust's particular practices and objectives. This broad discretion traditionally accorded the trustees, and its corollary of a limited standard of review, reflects judicial recognition that the courts should be reluctant to substitute their judgments for the judgments made by those with special expertise and familiarity with trust fund matters. *See Johnson v. Botica*, 537 F.2d 930 (7th Cir. 1976); *Gomez v. Lewis*, 414 F.2d 1312 (3rd Cir. 1969); *Pete v. U.M.W.A. Welfare Fund*, 517 F.2d 1275 (D.C. Cir. 1975).

Congress intended that trustees have primary responsibility for benefit claims. At the same time, trustees have a fiduciary duty to properly administer benefit claims and to ensure that trust fund monies are not expended erroneously and that no participant receives benefits that another under like conditions was refused. If courts or arbitrators were to abandon the traditional standard of review in cases such as these and substitute their judgments in particular cases without giving due deference to judgments of the trustees, the trustees' ability to administer the trust in a uniform manner might be seriously impaired. *See e.g. Bakery & Confectionary Union*, 455 F. Supp. at 820.

## IV. THE DECISION OF THE TRUSTEES HEREIN MEETS THE STANDARD OF REVIEW AND SHOULD BE SUSTAINED

### A. The Trustees Committed No Errors Of Law In Denying PETITIONER's Service Pension Benefit While She Is Employed By The Holiday Inn On The Bay Hotel

Sections 402 and 404 of ERISA, 29 U.S.C. §§ 1102, 1104, require that every employee benefit plan be established and maintained pursuant to a written instrument and that the plan must be administered "in accordance with the documents and instruments governing the plan." *See also Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984). In the instant case, the ERISA-mandated instrument is the PLAN.

Pursuant to the Trust Agreement, the Trustees have full and exclusive authority to control and administer the PLAN and the exercise of their specific powers is discretionary. Trust Agreement, Article IX, §§ 1-2. A true and correct copy of the Trust Agreement is attached hereto as Exhibit "3", and incorporated herein by reference. The Trust Agreement provides the TRUSTEES with discretion to determine eligibility for benefits and to construe the terms of the PLAN. Thus, the abuse of discretion standard applies and the TRUSTEES' findings may be overturned only if they are found to be clearly erroneous. *See Jones*, 906 F.2d at 481-82.

Additionally, the plain language of the PLAN is consistent with the TRUSTEES' interpretation. The relevant provisions of the PLAN state:

> "Section 1.27 Retired Employee. The term "Retired Employee" shall mean an Employee who has retired from Employment in the Industry within the meaning of Article III.
>
> . . .
>
> "Section 3.10 Service Pension. An employee shall be eligible to retire after January 1, 1998, on a Service Pension for the first of any month following the date he or she has accrued a total of at least thirty (30) Past and Future Service Credits, at least one of which must be Future Service. (Emphasis added.)
>
> "Section 3.10 Amount of Service Pension. The amount of an employee's Service Pension shall be the amount of his or her monthly Normal Retirement Pension determined under Section 3.02 as though he or she had retired on his or her Normal Retirement Date."



EXHIBIT E
25

The record of the Appeal Hearing demonstrates that PETITIONER is engaged in continuous employment at the Holiday Inn On The Bay Hotel. PETITIONER has not provided the TRUST FUND with an Employer's Certification verifying that she has severed her employment from the Holiday Inn On The Bay Hotel. Consequently, a Service Pension Benefit cannot be awarded to PETITIONER as she has not retired from service in the Industry as required by the terms of the PLAN.

The TRUSTEES' decision was not clearly erroneous as they followed the clear language of the PLAN in their determination that the PETITIONER is not eligible to retire and therefore not eligible for a Service Pension Benefit under the terms of the Pension Plan and she has not served her employment with the Holiday Inn On The Bay Hotel.

The PLAN at issue is a qualified plan under Internal Revenue Code Section 401(a) and in administering the benefits the TRUSTEES must follow the clear language of the Code as well as the Treasury Regulations and the applicable Revenue Rulings. According to the Treasury Regulations, the primary reason qualified pension plans are established and maintained by employers is to provide systematically for the payment of definitely determinable benefits to employees over a period of years, usually for life, after retirement. Tres. Reg. Sec. 1.401-1(b)(1)(i) (Emphasis added). Generally, a qualified pension plan may not distribute benefits to participants before they reach normal retirement age while they still are actively employed. A pension plan which permits the participants, prior to any severance of employment (e.g. retirement, disability, or death) to withdraw all or a part of the funds accumulated on their behalf that consists of employer contributions or increments thereon is inconsistent with the accepted concept of a pension plan under the requirements of section 401(a) of the Code. *See* Rev. Rul. 56-693, 1956-2 CB 282 *as modified by* Rev. Rul. 60-323, 1960-2 C.B. 148; Rev. Rule 74-417, I.R.B. 1974-35, 6. Copies of the Revenue Rulings are attached hereto as Exhibit "4."

///

Applying the above law to the matter at hand, it is clear PETITIONER is not entitled to benefits as she is still actively employed and has not reached normal retirement age under the Plan. Thus, the TRUSTEES made no errors of law and their decision should be upheld.

### B. The Trustees Have Not Acted Arbitrarily or Capriciously in the Exercise of Their Discretion

"According to the clear weight of federal authority, the actions of the trustees in the administration of the pension plan must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious." *Dennard v. Richards Group*, 681 F.2d 306, 313 (5th Cir. 1982), *citing Bayles v. Central States*, 602 F.2d 97, 99 and 100 n.3 (5th Cir. 1979).

In determining whether the trustees' actions were arbitrary or capricious, or in bad faith, the following must be considered:

> "(1) whether the Trustees' interpretation [of the plan] is contrary to the language of the provision in question or renders provisions of the plan superfluous;
>
> "(2) whether it is consistent with Plan's purposes;
>
> "(3) whether it is consistent with provisions' purpose;
>
> "(4) whether it is consistent with prior similar interpretation and whether the participants had notice of the TRUSTEES' interpretation."

*Donovan v. Carlough*, 576 F. Supp. 245, 249 (D.C. D.C. 1983). "The application of these factors is not formulaic, however, and the weight given to each will vary according to the context of the case." *Id.* The Trustees' decision "need not be the best possible decision, only one with a rational justification." *Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984), *cert. denied*, 467 U.S. 1242 (1984).

The record of the Appeal Hearing clearly demonstrates that the TRUSTEES did not act arbitrarily and capriciously. The TRUSTEES interpreted the PLAN pursuant



EXHIBIT E
27

to its express provisions and in accordance with the provisions' plain and apparent meaning. The definition of "Retired Employee" and the qualifications for a Service Pension Benefit are clearly set out in the PLAN.

The purpose of the PLAN is to provide retirement, death, and disability benefits to workers and their families once they have completed the required number of years of service. Service Pension Benefits under the PLAN provide an unreduced benefit to a participant much earlier than her normal retirement age, upon satisfaction of the eligibility criteria. For this reason, TRUSTEES restrict a service pension retiree's post-retirement employment. By failing to cease working for the Holiday Inn On The Bay Hotel, PETITIONER is performing work that precludes her from being classified as a "Retired Employee" under the PLAN. The requirement of severance of employment is consistent with the purpose of the PLAN and the Internal Revenue Code, which precludes in service distributions prior to normal retirement age.

PETITIONER's unsupported assertion that other employees of the Holiday Inn on the Bay Hotel have received Service Pension Benefits without first separating from service is of no consequence. Even if such evidence were considered, administrative errors do not provide a basis for awarding pension benefits. In *Vitale v. Latrobe Area Hospital*, 420 F.3d 278, 284 (3rd Cir. 2005), the Court stated that "no case holding an employee who is unambiguously ineligible for benefits under the terms of an ERISA plan can nonetheless receive that benefit because the administrator granted it to other ineligible participants."

The TRUSTEES have a fiduciary duty to properly administer the PLAN and to ensure that TRUST FUND monies are not expended erroneously, and that no participant receives benefits that another under like conditions was refused. Additionally, the TRUSTEES must apply their PLAN uniformly and consistently to all PLAN participants. The PETITIONER has not provided the TRUST FUND proof of retirement; thus, the PETITIONER is not entitled to a Service Pension Benefit.

///



EXHIBIT E

28

Accordingly, the TRUSTEES' decision to deny PETITIONER's application for a Service Pension Benefit was not arbitrary or capricious. The plain language of the PLAN, along with the purpose of the provisions, clearly show that the decision was a logical interpretation of the PLAN applied to the particular facts of PETITIONER's case.

### C. The Trustees' Findings Were Based Upon Substantial Evidence

For the reasons set forth above, it is clear that the TRUSTEES' findings were based upon substantial evidence and should not be re-weighed in this proceeding. "Substantial evidence" has repeatedly been defined as:

> "Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." (Citations omitted).

*Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1988); *Boggs v. Lewis*, 57 Lab. Cas. (CCH) P12, 562, ¶ 6 (D.C. D.C. 1968).

In the case at bar, the TRUSTEES' decision was based upon the PETITIONER's continued employment with the Holiday Inn On The Bay Hotel and admissions made by the PETITIONER. The TRUSTEES' decision was made after due consideration of the administrative record on appeal in accordance with the express provisions of the PLAN. The TRUSTEES' decision was therefore based upon substantial evidence and must be upheld on that basis.

## V. Conclusion

The TRUSTEES must administer the PLAN uniformly and in a non-discriminatory manner. The decision that the PETITIONER was not entitled to early retirement benefits because of her work at the Holiday Inn On The Bay Hotel was based upon a literal application of the provisions of the PLAN, the particular facts of the case, and the relevant case law. The TRUSTEES' decision is not erroneous as a matter of law,



EXHIBIT F

was not arbitrary or capricious, and was based upon substantial evidence. Accordingly, the TRUSTEES' decisions to deny PETITIONER's application for a Service Pension Benefit should be sustained.

DATED: August 2, 2007

BOARD OF TRUSTEES OF THE
SAN DIEGO UNITE-HERE PENSION FUND

By: ______________________
Melissa W. Cook, Esq.
Kerry Kessler Fennelly, Esq.
MELISSA W. COOK & ASSOCIATES
3444 Camino del Rio North, Suite 106
San Diego, California 92108
Attorney for Respondent



EXHIBIT F
30

EXHIBIT 4 of EXHIBIT E

LEXSEE REV. RUL. 56-693

Revenue Ruling 56-693

Rev. Rul. 56-693; 1956-2 C.B. 282; 1956 IRB LEXIS 81

July 1956

[*1]

**SUBJECT MATTER:** SECTION 401.-QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS

**TEXT:**

Although an employees' qualified pension plan may provide benefits prior to normal retirement, such as disability and death benefits, which are only incidental to the main purpose of the plan, an employees' pension plan which permits participants, prior to any severance of their employment or the termination of the plan, to withdraw all or a part of the funds accumulated on their behalf, in times of a financial need or otherwise, will fail to meet the requirements of section 401 (a) of the Internal Revenue Code of 1954. However, in a plan which can be properly considered as a profit-sharing plan, a similar provision would not necessarily prevent qualification.

Advice has been requested whether an employees' savings plan which permits participants, prior to any severance of their employment or the termination of the plan, to withdraw all or a part of the funds accumulated on their behalf, will meet the requirements of a qualified plan under section 401(a) of the Internal Revenue Code of 1954.

An employer established an employees' savings plan under which the employer agreed to contribute an amount equal to 50 percent [*2] of the amount contributed by the employee participants. Contributions by the employees are limited to ten percent of their compensation. Amounts contributed by the employer are not, in any way, limited to profits. Benefits under the plan are determined as the amount of retirement income which the total of all contributions, plus earnings thereon, standing to the credit of the participant will purchase at the time of retirement. Thus, the plan being a money purchase pension plan, it must meet the requirements of section 401 (a) of the Code pertaining to a pension plan in order to be considered a qualified plan.

Under the provisions of the plan, participants are entitled to withdraw all or a part of their contributions, at any time, together with a share of the employer's contributions computed on a graduated vesting basis, upon establishing a financial need therefor. This privilege of withdrawal is uniformly applicable to all participants.

Section 1.401-1 of the Income Tax Regulations defines a pension plan as a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determined benefits to his employees over a period of years, usually [*3] for life, after retirement. The word "primarily" in the definition of a pension plan was intended to mean that such a plan is not precluded from meeting the applicable requirements for qualification merely because it provides

EXHIBIT E

benefits prior to normal retirement, such as for disability or death benefits, which are only incidental to the main purpose of the plan. However, a pension plan which permits the participants, prior to any severance of employment (e. g. retirement, disability, or death) to withdraw all or a part of the funds accumulated on their behalf is inconsistent with the accepted concept of a pension plan which meets all of the requirements of section 401 (a) of the Code.

Accordingly, it is held that, although an employees' qualified pension plan may provide benefits prior to normal retirement, such as disability and death benefits, which are only incidental to the main purpose of the plan, an employees' pension plan which permits the participants, prior to any severance of their employment or the termination of the plan, to withdraw all or a part of the funds accumulated on their behalf, in times of a financial need or otherwise, will fail to meet the requirements of section 401 (a) of the Code. [*4] However, in a plan which can be properly considered as a profit-sharing plan, a similar provision would not necessarily prevent qualification.

EXHIBIT F

LEXSEE REV. RUL. 60-323

Revenue Ruling 60-323

Rev. Rul. 60-323; 1960-2 C.B. 148; 1960 IRB LEXIS 36

July 1960

[*1]

**SUBJECT MATTER:** SECTION 401.-QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS

**TEXT:**

An employees' pension plan will not be denied qualification because it contains provisions permitting participants to withdraw their voluntary contributions which are made in addition to their compulsory contributions, where such withdrawals do not affect the member's participation in the plan, the employer's past or future contributions on his behalf, the basic benefits provided by both the participant's and the employer's nonwithdrawable contributions, and no interest is allowable with respect to the contributions withdrawn either at the time of withdrawal or in computing benefits at retirement.

Revenue Ruling 56-693, C.B. 1956-2, 282, and Part 2 (c) (2) of Revenue Ruling 57-163, C.B. 1957-1, 128, modified.

Advice has been requested concerning the effect of a provision, in an otherwise qualified employees' pension plan, permitting the participants to withdraw their voluntary contributions which are made in addition to their compulsory contributions.

A retirement plan for the benefit of the employees of a life insurance company is funded under a deposit administration type of arrangement with the employer company acting [*2] as insurer. Under the terms of the plan, the employer contributes an amount equal to five percent of each participant's earnings and each participant must contribute four percent of his earnings. The participants may also make additional contributions of from one to six percent of their earnings on a voluntary basis.

The combined contributions by the employer and the employee participants are set aside in a separate fund to which interest of not less than two percent is added annually. This fund represents the reserve for benefits provided for under the plan and is maintained in accordance with applicable state insurance laws to which the employer is subject as a life insurance company. Upon retirement the accumulated employee and employer contributions then standing to a member's credit are applied to provide him with an annuity.

The plan has been held to qualify under section 401 (a) of the Internal Revenue Code of 1954.

An amendment to the plan permits any member who has not commenced receiving a retirement benefit under the plan to withdraw his voluntary contributions in amounts of not less than $1,000,

**EXHIBIT E**

without interest. According to the plan, the interest accumulated on any such [*3] withdrawn contributions will be forfeited forever by the participant.

Part 2 (c) (2) of Revenue Ruling 57-163, C.B. 1957-1, 128, refers to Revenue Ruling 56-693, C.B. 1956-2, 282, and holds that although a pension plan may provide incidental benefits prior to normal retirement, such as disability and death benefits, it will fail of qualifications if it permits participants, prior to severance of employment or termination of the plan, to withdraw all or part of the funds accumulated on their behalf, except their own contributions on discontinuance of participation.

Under the terms of the plan in question, when a participant exercises the right to withdraw his voluntary contributions, it shall in no way affect his participation in the plan, the employer's past or future contributions on his behalf, or the basic benefits provided by both the participant's and the employer's nonwithdrawable contributions. Further, no interest is allowable with respect to the contributions withdrawn either at the time of withdrawal or in computing benefits at retirement.

Accordingly, it is held that, under the facts of the present plan, the provision permitting participants to withdraw their own voluntary [*4] contributions will not, of itself, disqualify the otherwise qualified plan.

Revenue Ruling 56-693, C.B. 1956-2, 282, and Part 2 (c) (2) of Revenue Ruling 57-163, C.B. 1957-1, 128, are hereby modified to the extent that a pension plan will not be denied qualifications because it contains provisions permitting a participant to withdraw his voluntary contributions which are made in addition to his compulsory contributions, where such withdrawals do not affect the member's participation in the plan, the employer's past or future contributions on his behalf, the basic benefits provided by both the participant's and the employer's compulsory contributions, and, under the provisions of the plan, no interest is allowable with respect to the contributions withdrawn either at the time of withdrawal or in computing benefits at retirement.

EXHIBIT F

LEXSEE REV. RUL. 74-417

Revenue Ruling 74-417

Rev. Rul. 74-417; 1974-2 C.B. 131; 1974 IRB LEXIS 139

July 1974

[*1]

**SUBJECT MATTER:** Section 401.-Qualified Pension, Profit-sharing and Stock Bonus Plans

**APPLICABLE SECTIONS:**

26 CFR 1.401-1: Qualified pension, profit-sharing, and stock bonus plans.

**TEXT:**

**Voluntary contributions to money purchase plan; withdrawal provision.** An employer-funded money purchase pension plan that permits participants to make limited voluntary contributions and provides that withdrawals from a participant's account may be made prior to retirement to meet educational expenses of his spouse or children, with no restriction limiting the withdrawals to the participant's contributions plus increments thereon, does not qualify under section 401 (a) of the Code.

Advice has been requested whether a plan qualifies as a pension plan under section 401 (a) of the Internal Revenue Code of 1954 if it contains the provisions for withdrawals described below.

A money purchase pension plan intended to qualify under section 401 (a) of the Code provides benefits funded through employer contributions of 15 percent of the participants' compensation plus voluntary contributions of employees of up to ten percent of their compensation. The plan also provides that distributions may be made only to retired participants except that any necessary [*2] amounts may be withdrawn from a participant's account at any time to meet educational expenses of college and graduate school students who are either spouses or children, of the plan participant. There is no restriction in the plan on the portion of a participant's interest that may be used for these educational payments.

Section 1.401-1 (b) (1) (i) of the Income Tax Regulations provides that a pension, plan is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits over a period of years, usually for life, after retirement.

A qualified pension plan may permit the withdrawal of funds by a participant, prior to termination of employment, but only if such withdrawals will not exceed the participant's voluntary contributions plus any increments actually earned on those contributions. See Rev. Rul. 69-277, 1969-1 C.B. 116.

The subject plan contains no provisions for restricting the withdrawals for educational payments to amounts not to exceed the participant's contributions plus increments thereon.

EXHIBIT E

Accordingly, this plan does not qualify as a pension plan under section 401 (a) of the Code.

EXHIBIT E

# PROOF OF SERVICE

I, the undersigned, declare that I am employed in the County of San Diego, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 3444 Camino del Rio North, Suite 106, San Diego, California 92108; I am employed in the office of a member of the bar of this Court at whose direction I served a copy, including all exhibits, if any, on **November 30, 2007**, of the following document(s):

NOTICE OF PETITION AND PETITION FOR ORDER
VACATING ARBITRATION AWARD

by placing a true copy thereof in an envelope addressed to the person(s) named below at the addresses(es) shown:

Timothy L. Brictson, Esq.
Law Office of Brictson and Cohn
2214 Fifth Avenue
San Diego, CA 92101
Attorney for Sylvia Quintero

☒ **By United States mail:** I placed a true copy in a sealed envelope or package addressed to the person(s) at the address(es) indicated above on the above-mentioned date and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **By Facsimile:** From facsimile machine telephone number (619) 280-4304, on the above-mentioned date, I served a full and complete copy of the above-referenced document(s) by facsimile transmission to the person(s) at the number(s) indicated.

☐ **By Personal Service:** I placed a true copy in a sealed envelope addressed to each person(s) named at the address(es) shown and gave same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☐ **By Next Day Mail:** I placed a true copy in a sealed envelope addressed as indicated above on the above-mentioned date. I am readily familiar with this firm's practice of collection and processing of correspondence for delivery by next day mail. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours with a fully completed airbill under which all delivery charges are paid by this firm that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **November 30, 2007**, at San Diego, California.

Marion D. Nelson
Marion D. Nelson

JS 44 (Rev. 11/04) ORIGINAL

# CIVIL COVER SHEET

FILE BY FAX

FILED 07 NOV 30 PM 12:21 CLERK U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY: DEPUTY

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

San Diego UNITE-HERE Pension Fund

(b) County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

Melissa W. Cook & Associates 619-280-4302
3444 Camino del Rio North, Suite 106, San Diego, CA 92108

## DEFENDANTS

Silvia Quintero

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

'07 CV 2261 JLS (JMA)

Attorneys (If Known)

Timothy Brictson, Esq., Law Office of Brictson & Cohn
2214 Fifth Avenue, San Diego, CA 92101

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- [X] 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

[X] 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
9 U.S.C. Section 10; 29 U.S.C. Section 1332

Brief description of cause:
Petition to Vacate Arbitration Award in ERISA matter

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE DOCKET NUMBER

DATE 11/30/2007

SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # 144949 AMOUNT #350 APPLYING IFP JUDGE MAG. JUDGE

[initials] 11/30/07

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 144949 - SH

November 30, 2007
12:20:18

Civ Fil Non-Pris
07-02261
Judge..: JANIS L. SANMARTINO
Amount.: $350.00 CK
Check#.: BC043867

Total-> $350.00

FROM: SD UNITE HERE PENSION FUND V.